695 So.2d 499 (1997)
Carl F. ZINN and Poungtong Zinn, Appellants,
v.
GJPS LUKAS, INC., etc., et al., Appellees.
No. 96-2418.
District Court of Appeal of Florida, Fifth District.
June 13, 1997.
*500 Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami; and Wagner, Vaughan & McLaughlin, P.A., Tampa, for Appellants.
H. Terrell Griffin of Griffin & Linder, P.A., Orlando, for Appellees.
GOSHORN, Judge.
Carl and Poungtong Zinn appeal the final judgment in favor of GJPS Lukas, Inc. and J & M Flying Service, Inc. [Appellees], defendants in the underlying tort action. The Zinns argue that the court erred in entering a directed verdict against them on the issue of their business loss claims. Specifically, they contend that their business was not destroyed by Appellees' admitted negligent overspraying of a neighboring field, but rather was interrupted, entitling them to restoration costs and lost profits. Accordingly, they argue, the lack of evidence of the value of the business should not have subjected them to a directed verdict. We agree and reverse.
The Zinns built and maintained ponds in which they raised brine shrimp for resale to pet shops and individuals. They also bought and raised tropical fish for resale. The Zinns averaged almost $10,000 per month in sales from the brine shrimp alone. Appellee Lukas owned adjacent farm land and, in 1991, hired Appellee J & M Flying Service, Inc. to aerially spray its corn crop with pesticides. Expert testimony established that the pesticide overspray was lethal to the algae in the Zinns' ponds and therefore to the shrimp. The Zinns twice attempted to restart their brine shrimp in the outdoor ponds, but repeated pesticide spraying killed off these shrimp also. With the important exception of brine shrimp that Mrs. Zinn continued to grow for resale in a covered shed, the brine shrimp "farming" ended.
At the close of all the evidence, the Appellees renewed their motion for directed verdict based on the Zinns' failure to put on any evidence of the value of their business, arguing that because the business had been destroyed, the measure of damages was the market value of the business at the time of its destruction, not the lost profits the Zinns were claiming. See Aetna Life & Casualty Co. v. Little, 384 So.2d 213 (Fla. 4th DCA 1980) (where business was completely destroyed by execution and sale, proper measure of damages is market value on date of the sale). The trial court agreed that the business had been destroyed. Because the Zinns failed to adduce evidence of the value of the business on the date of its destruction, the court entered a directed verdict against the Zinns on their business loss claim.
Our review of the record demonstrates that while the Zinns' business was greatly diminished, it was not destroyed. Mrs. Zinn continued to grow brine shrimp for resale after the crop dusting ended. She also continued to buy and sell tropical fish. Where a business continues after suffering from an act of negligence, the business is entitled to recover the lost profits attributable to the defendant's negligent act. W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla.1989); see also Restatement (Second) of Torts § 931 *501 cmt. e (1977) ("Detention or Preventing Use of Land or Chattels") ("In addition to the value of the use during a period of detention, the owner is entitled to damages for the harm legally caused to the land or chattel or to the owner's business by the deprivation.... If the detention of the land or chattel causes the owner to lose a specific sale or to lose a ready market, damages can be awarded for the loss."). Accordingly, should a jury find Appellees liable for damaging the Zinns' business, the Zinns should be awarded their lost profits.[1]
The amount of lost profits recoverable will be dependent, in part, upon whether the Zinns discharged their duty to mitigate their damages. Their financial status is relevant to this issue. See Restatement (Second) of Torts § 918 cmt. e (1977) ("Avoidable Consequences").[2] The circumstances in which the Zinns found themselves are also relevant to the mitigation issue. The Zinns should be permitted to attempt to establish that the threat of renewed spraying was very real and prevented them from reasonably reinstituting full production. Their position is bolstered by the fact that twice after the initial kill-off they tried to return to full production but were thwarted by renewed spraying.
REVERSED and REMANDED for new trial.
COBB and ANTOON, JJ., concur.
NOTES
[1] The damage to the business would not be too remote to permit recovery: Appellees knew of the Zinns' aquatic-based business, knew that the pesticides were fatal to aquatic invertebrates, were told that the spray had in fact killed off the brine shrimp, and yet continued to spray.
[2] Section 918, comment e states:

e. When substantial expense and effort are required. A person whose body has been hurt or whose things have been damaged may not be unreasonable in refusing to expend money or effort in repairing the hurt or preventing further harm. Whether or not he is unreasonable in refusing the effort or expense depends upon the amount of harm that may result if he does not do so, the chance that the harm will result if nothing is done, the amount of money or effort required as a preventive, his ability to provide it and the likelihood that the measures will be successful. There must also be considered the personal situation of the plaintiff. A poor man cannot be expected to diminish his resources by the expenditure of an amount that might be expected from a person of greater wealth. So too, whether it is unreasonable for a slightly injured person not to seek medical advice may depend on his ability to pay for it without financial embarrassment. Likewise when a person seeks to recover damages for loss of profits or because the tortfeasor has prevented him from taking advantage of a favorable market, his financial ability to provide a substitute for that of which he has been deprived is relevant. If he has adequate resources, he must use them to minimize the loss.